CHANDLER, J., for the Court.
¶ 1. Kantima Eason and Sherman Kosier had a child together out of wedlock. After they ended their relationship, Kantima petitioned the Lauderdale County Chancery Court for modification of custody. Aggrieved that the chancellor awarded custody to Sherman, Kantima appeals to this Court asserting the following issue:
I. WHETHER THE CHANCELLOR ERRED IN FINDING IN FAVOR OF SHERMAN ON THE AL-BRIGHT FACTOR OF MORAL FITNESS.
Finding no error, we affirm.
FACTS
¶ 2. Kantima Eason and Sherman Kosier had a child out of wedlock on July 31,1995. At the time the child was born, Kantima was married to Arthur Eason although they had been separated since June 1991. A few days after the child was born, Sherman filed a suit to establish paternity. The court held by clear and convincing evidence that Sherman was the father and awarded him joint custody on January 29, 1996. Kantima and Arthur Eason were divorced on September 3,1996.
¶ 3. Kantima and Sherman began dating in July of 1993. They lived together for seven years until the relationship ended in July of 2000, and one year later Sherman married Debra Kosier.
¶ 4. On August 24, 2000, Kantima filed a motion to modify custody. She contended that there had been a material change in circumstances considering the couple no longer resided together and the parties were unable to communicate concerning the child’s needs. Sherman answered *190 claiming that it was in the child’s best interest for him to have sole custody.-
¶ 5. In November 2000, the parties entered into a settlement agreement establishing temporary joint custody between the parties. On January 24, 2002, the chancellor awarded primary custody to Sherman with visitation granted to Kanti-ma. Kantima was ordered to pay $180 per month in child support. On appeal, Kanti-ma asserts that the chancellor created manifest error in finding in favor of Sherman on the Albright factor of moral fitness.
LAW AND ANALYSIS
¶ 6. “In the difficult matter of determining child custody ... the chancellor is necessarily vested with substantial discretion.” Rinehart v. Barnes, 819 So.2d 564, 565(¶ 4) (Miss.Ct.App.2002). “Because of the latitude given the chancellor, an appellate court reviewing the chancellor’s decision on appeal has a limited role.” McWhirter v. McWhirter, 811 So.2d 397, 399(¶ 4) (Miss.Ct.App.2001). “Such a reviewing court must give deference to the chancellor’s decision and may reverse” only if the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. Id.
¶ 7. Proceedings that address a request for modification of custody should follow these steps:
(1) the initial burden is on the party seeking the change to demonstrate that there has been a material change in the circumstances affecting the child; (2) if that is shown, it must also be shown that the change is detrimental to the child’s welfare; and (3) finally, the chancellor must find that the change in custody is in the child’s best interest. ■
Robison v. Lanford, 822 So.2d 1034, 1037(¶ 10) (Miss.Ct.App.2002).
¶ 8. The chancellor’s memorandum opinion stated that the circumstances had materially changed due to the parties’ “failure to communicate and to exchange information relevant to the best interest of their child.” Neither party contests this finding, nor does either party deny that this material change is detrimental to the child’s welfare.
¶ 9. Kantima only questions the chancellor’s weighing of the Albright factors in the third step of the modification analysis. She contends that the chancellor improperly applied the Albright factors by overemphasizing her romantic relationships outside the bonds of marriage.
¶ 10. Kantima cites to Hollon v. Hollon, 784 So.2d 943, 949(¶ 25) (Miss.2001), in which the Mississippi Supreme Court stated that a parent’s misconduct is not per se grounds for denial of custody. However, the chancellor did not make his custody determination solely upon Kantima’s moral fitness. The chancellor also found that the stability of the home environment and the employment of each parent favored Sherman.
¶ 11. The chancellor contrasted the stability of the environment that the father would provide to the environment that the ‘ mother would provide. He noted that the presence of Sherman’s wife Debra and his daughter Melony contributed to the stability of the home.
¶ 12. The chancellor also compared Sherman’s employment and financial stability to that of Kantima’s. Sherman is the supervisor in the metal division at Peavey Electronics. Along with $60 in child support for his daughter, Sherman’s monthly income is $2,369.66. His work schedule is 7:00 a.m. to 3:30 p.m. on Monday through Friday. Kantima is the grill *191 manager for McDonald’s. She works six days a week and makes a net monthly income of $964.45. Her work schedule is 5:00 a.m. to 3:00 p.m. when the child is with Sherman and 7:30 a.m. to 3:00 p.m. when the child is with her. The chancellor stated that the father’s work schedule allowed him more of an opportunity to supervise and care for the child.
¶ 13. The chancellor made the following findings regarding Kantima’s lifestyle. He noted that Kantima had two live-in lovers since the end of her relationship with Sherman and admitted that her boyfriends had spent the night at her home while her son was in the house. She testified that she was not interested in ever remarrying. The chancellor also expressed his concern for Kantima’s weekly trips to the bingo hall and to the casinos.
¶ 14. The chancellor found that, although Sherman had been intemperate in his use of alcoholic beverages in the past, since the parties’ breakup he has led a fairly exemplary life, remarried and established a home more suitable for the rearing of children. The chancellor held that the moral fitness factor favored Sherman because he changed his lifestyle and Kanti-ma has no intention of changing her “promiscuous activities.”
¶ 15. The chancellor’s opinion reflects a careful analysis of the factors outlined in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983) and proper application of those factors to the facts in this case. The chancellor correctly concluded, based on substantial evidence, that it was in the child’s best interest to be in the custody of Sherman. The chancellor’s “polestar consideration” was the child’s best interest, and his decision is affirmed.
¶ 16. THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTH-WICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS and GRIFFIS, JJ., CONCUR.